## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**UNITED STATES OF AMERICA**          **CASE NO.: 5:21-CR-1-OC-28PRL**

**v.**

**DUSTIN SANDIFORD,**

_____/

## AMENDED MOTION TO SUPPRESS EVIDENCE

**COMES NOW** the Defendant, DUSTIN SANDIFORD, by and through

undersigned counsel, Hereby moves this Honorable Court to enter an order

suppressing certain evidence in this case, and alleges the following:

1.  **EVIDENCE SOUGHT TO BE SUPPRESSED:**

    A cellular telephone, black I phone, and all of the contents contained

in the phone or video taped from the phone or derived from the phone in any manner,

by law enforcement.

2.  **STATEMENT OF THE FACTS:**

    Pursuant to search warrants, on December 2, 2020, F.B.I. agents

Moreno and Burros along with other agents of the F.B.I. and multiple members of the

1

Citrus County Sheriff's Office, entered the Defendants place of employment where he then was detained and searched. On the same date other members of the F.B.I. simultaneously executed a search warrant for the Defendants residence, located at 9465 N. Argo Way, Citrus Springs, Florida.

During the detention and search of the Defendant, agent Moreno located a black I-Phone and transferred control and possession of said I-Phone to an F.B.I. forensic technician who was waiting in the parking lot of Defendants place of employment. The black I-Phone seized was not listed in the search warrant.

The Defendant was then detained for a period of time exceeding two hours at his place of employment. The Defendant was clearly seized as evidenced by being told to place his hands on his head, by being told by several F.B.I. agents that he was being "administratively detained", and by being told he was "not allowed to leave." The Defendant was told he would only be allowed to leave after the conclusion of the search of his residence, if no incriminating evidence was found there.

The Defendant respectfully asked to leave. Only after the Defendant stated "I know my rights and I would think, considering that we are more than two hours into this, that you've detained me for more than a reasonable amount of time. I am again asking to leave." At that point agent Burros called the United States Attorney's Office, advising him of the current situation, and the decision to allow the Defendant

2

to leave was finally made. The decision to allow the Defendant to leave coincided with the conclusion of the search of his residence.

During the period of detention at the Defendant's place of employment, Agent Burros repeatedly traversed back and forth between: A) observing and assisting with the detention of the Defendant, B) entering and exiting the vehicle parked in the lot of the Defendant's place of employment that contained agents actually analyzing the seized I-Phone, and C) The actual residence being searched. This shows that the execution of the search warrant and the seizure of the Defendant were both part of one connected course of action, not exclusive of each other.

Once the Defendant was released from detainment all members of law enforcement departed from the Defendant's residence and place of employment. Agent Burros then returned to the Defendant's place of employment to provide the Defendant with a receipt for the seizure of the I-Phone and to explain the unsealed portions of the search warrant. This was the first time the search warrant was shown to the Defendant.

Upon arriving at his residence, the Defendant located a separate receipt for items seized from his home.

On December 8, 2020, agents Burros and Moreno arrested the Defendant at his place of employment for the charges in the complaint based on the contents alleged

to be on the I-Phone seized on December 2, 2020.

3.    **GROUNDS FOR SUPPRESSION:**

A)    The F.B.I. exceeded the scope of the search warrant: the Defendant's place of employment was four streets sway from the residence being searched, and thus well outside the definition of "immediate vicinity" as set forth in <u>Bailey v. United States</u>., 568 U.S. 186 (2013), <u>Bailey</u> defines immediate vicinity, "as the lawful limits of the residence, and whether the occupant  was within the line of sight of the residence".

B)    The F.B.I. exceeded the scope of the search warrant by detaining the Defendant, searching for and then seizing evidence outside of the immediate vicinity of the premises to be searched in violation of clear legal precedents set forth in <u>Bailey,</u> 133 S. Ct 1031 and <u>Michigan v. Summers</u>, 452 United States, 692, (1981).

C)    The holding in "<u>Summers </u>applies only to the seizure of occupants. That is, persons within the immediate vicinity to be searched. The Defendant was seized a mile away, therefore Summers cannot sanction the Defendant's detention, <u>Bailey v. United States</u>, 133 S.Ct. 1031(2013).

4

D)     The Supreme Court clearly states, in unambiguous terms, "that the sole deciding facts in determining whether or not the Defendant was seized legally boils down to one question: was the Defendant seized withing the immediate vicinity of the premises to be searched"? The Defendant was seized far from his residence, illegally.

E)     The Defendant was not seized within the immediate vicinity of the premises to be searched, see <u>Bailey</u>. The Defendant was at another location, his place of employment. The Detention was unreasonably long and not proper under the circumstances.

F)     The Supreme Court has held that all possible law enforcement interests set forth in <u>Summers,</u> that allow law enforcement to detain/seize all occupants inside the immediate vicinity of the premises to be searched, does not justify the seizure in this case of the Defendant. To allow the detention for occupants outside of the immediate vicinity of the premises to be searched is illegal.

G)     The Supreme Court has held, "even if the possible detention of a former occupant away from the premises could facilitate a later arrest if incriminating

evidence is discovered, the mere fact that law enforcement can be made more efficient can never by itself justify disregard of the Fourth Amendment" (Bailey v. United States).

H)     None of the 3 law enforcement interests identified in Summers applies with the same or similar force to the detention of a recent occupant beyond the immediate vicinity of the premises to be searched and each is also insufficient on it own to justify an expansion of the rule in Summers to permit the detention of a former occupant wherever he may be found away from the scene of the search," Bailey v. United States.

I)     The Defendant's fourth amendment rights were violated when the F.B,I. exceeded their detention authority granted in the search warrant by detaining/seizing the Defendant outside of the immediate vicinity of the premises to be searched and during the illegal detention, evidence was seized. The F.B.I.'s detention of the Defendant and the seizure of the cell phone was a seizure in violation of case law and the fourth amendment.

J)     A warrant granting authority to search and seize electronic equipment in one location, cannot be transferred to a person, Ybarra v. Illinois, 444 U.S. 85 (1979). The facts and circumstances that justified granting a warrant for a residence, could not be transferred to a person, not at the residence, at the time the warrant was executed. The correct method would be to get a warrant to search the Defendant for the cell device. The warrant in this case was to search the residence.

K)     The master affidavit states the items, including computers and cell phone will be located in the residence, see page 22 paragraph 31. The warrant for the residence describes items to be seized in attachment B, and will be located in the residence. Included in attachment B is the seizure of cell device.

L)     The warrant for the cell phone states: to seize a cell device. The warrant states, the property located in the Middle District of Florida. There is nothing in the phone warrant that  states to locate and detain the Defendant.

M)     The attachment A2 for the cell phone, states to seize an LG/android phone with the phone number 352-364-1308. The phone seized by the agents was an IPhone, not

7

listed in the warrant. Cell phone numbers can be switched from cell device to cell device and are not unique to one particular phone.

N)     The warrant for the cell phone is illegal because it is very vague. The warrant states to get an LG phone, with no model type nor serial number listed in attachment A2, for the cell device.

O)     Attachment B to the master affidavit lists items to be seized and searched. In paragraph 17 of  attachment B, it states to seize all records on the device described in attachment A2, that violate Title 18 U.S.C. Section 2252A and involves the Defendant. Attachment A2 describes an LG cell phone, not an IPhone.

P)     In the master affidavit on Page 22, paragraph 31, the affidavit states: the items described in attachment A2 have child porn and will be located in the residence. Although there is a separate warrant for the cell device, the affidavit repeatedly connects the cell phone to the residence and are never separated. It even goes as far as including an identical list of items to be seized and searched in both warrants supporting affidavits, attachment B. Also states the cell phone will be found in the residence of the Defendant.

8

Q)    The phone warrant gives authority to search the following property located in the Middle District of Florida, and states see attachment A2. In Michigan v. Summers, the agents have authority to detain persons at the residence of a search warrant being executed. When the agents arrived at the residence the Defendant was not there, therefore Summers no longer applies. The agents should have executed the residence warrant at a different time or waited until the Defendant returned to the residence. At the time the residence warrant was executed the agents still had 14 more days to do the search. The agents should have obtained an arrest warrant for the Defendant, United States v. Ramirez, 976 F.3d 946 (9th cir. 2020). When the agents want to go beyond the initial warrant, they should seek further warrants.

R)    The phone warrant itself is deficient on its face. The listing of a phone in vague terms in connection with a phone number, is not sufficient to satisfy the "particularity requirement" for search warrants.

S)    The phone warrant is illegal, as alleged earlier, it is vague. There are computer applications that can make it appear to recipients of calls, that the call they receive is from another number then the one that's actually used. The displayed number can be

9

any number the sender chooses to send. That courts have held the phone warrant should list the specific phone with a description with the serial number and IMEI number of the phone. United States v. Gallegos, 052319 txsdc crim H-17-678, search of apple IPhone, IMEI 013888003738427, 31 F.Supp 3d 159 (D.Dc 2014).

4.     The United States Attorney's office objects to this motion.

5.     That this motion is filed past the due date in the criminal scheduling order because of delays in receiving discovery. It is also filed past the due date because of delays in receiving sealed court documents.

## MEMORANDUM OF LAW

Under the law established by Michigan v. Summers, 452 United States 692 (1981), agents have no authority to seize Defendant when they arrived to execute the warrant because he was not at the residence.

"No warrants shall issue but upon probable cause and particularity prescribing the place to be searched and the person or things to be seized." United States v. Spilotoro 800 F.2d 959, 963 (9th cir. 1986).

10

The Fourth amendment's particularity requirement "confines an officer executing a search warrant strictly within the bounds set by the warrant." Vivens v. Six unknown named agents for Federal Bureau of Narcotics, 403 Unites states 389, 394 (1971).

To the extent agents want to seize relevant information beyond scope of warrant, they should seek a further warrant United States V. Sedaghty 728 F.3d 885, 914 (9th cir. 2013).

The particularity requirement leaves nothing to the discretion of the officer.

Immediate vicinity: Bailey v. United States, discussing Summers "immediate vicinity is narrowly defined in Bailey, for example, the supreme Court held that the officers violated the Summers rule by detaining a Defendant who had "left the apartment before the search began and waiting to detain him until he was almost a mile away."

State v. Wilson, 371 N.C. 920, 924/821 Se2d 811, 815 (2018).

It has long been established that "a person has been seized within the meaning of the 4th amendment only of in view of all circumstances surrounding the incident a reasonable person would have believed that he was not free to leave, United States v. Menden Hall, 446 U.S. 544, 554 (1980).

11

A warrant to search for contraband, founded on probable cause, implicitly carries with it the limited authority to detain. The occupants who are within " the immediate vicinity of the premises to be searched," or who are present during the execution of a search warrant" , See Bailey, See Summers.

In Bailey v. United States, the Supreme Court was confronted with a Defendant who was arrested almost a mile away from the location being searched. The court clarified that the categorical authority to detain incident to the execution of a search warrant must be limited to the Immediate vicinity of the premises to be searched. Ultimately, the court held that the seizure in Bailey was unlawful because the Defendant "was detained at a point beyond any reasonable understandings of the immediate vicinity of the premises in question. id. at 201, 133 S. ct. at 1042. The court has identified several factors that courts can consider to determine whether an occupant was detained within the "immediate vicinity of the premises to be searched" including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of re-entry from the occupants location, and other relevant factors.

The first law enforcement interest, cited in Summers, is to detain to protect officer safety. There were no officer safety issues in this Defendant's case. Bailey v. United States. The court held the risk that a departing occupant might alert those still

12

inside the residence is also an insignificant rationale for expanding the detention authority beyond the immediate vicinity to be searched.

The second law enforcement interest is the facilitation of the completion of the search. Unrestrained occupants can hide or destroy evidence, seek to distract officers, or simply get in the way. But a general interest in avoiding obstruction of a search cannot justify detention beyond the vicinity of the premises, Bailey and Summers.

The third is the interest in preventing flight which also serves to preserve the integrity of the search. If officers are concerned about flight in the event incriminating evidence is found, they might rush the search causing unnecessary damage or compromising its careful execution. The need to prevent flight, however if unbounded, might be used to argue for detention of any regular occupant regardless of his or her location at the time of the search, Bailey.

Even if the detention of a former occupant away from the premises could facilitate a later arrest if incriminating evidence is discovered, the mere fact that law enforcement may be made more efficient can never by itself justify disregard the fourth amendment, Bailey and Summers.

In summary, none of the three law enforcement interests identified in Summers applies with the same or similar force to the detention of recent occupants beyond the immediate vicinity of the premises to be searched. Each is also

13

insufficient on its own to justify an expansion of the rule in <u>Summers</u> to permit the detention of a former occupant, wherever he may be found away from the scene of the search, <u>Bailey.</u>

As recognized, in <u>Summers</u> the detention of a current occupant represents only an incremental intrusion upon personal liberty when the search of a home has been authorized by a valid warrant, <u>Bailey</u> and <u>Summers</u>.

An arrest of an individual away from his home involves a different level of intrusiveness. A public detention, away from the residence, even if incident to a search warrant, will resemble a full fledged arrest, <u>Bailey</u>. The seizure of the cellular phone, pursuant to the illegal detention, renders the seizure illegal too.

The Supreme Court ruled the lower court erred when it held the detention of Defendant <u>Bailey</u> was not unreasonably prolonged. The court has since ruled the question to ask is: was the person seized within the immediate vicinity to be searched? The issue is a straight forward binary inquiry and not a balancing act by courts.

The question in this cause is whether <u>Summers</u> applies at all. It applies only to the seizure of occupants, that is persons within "the immediate vicinity of the premises to be searched." In <u>Bailey</u>, the Defendant was seized a mile away. Therefore, <u>Summers</u> cannot sanction Bailey's detention. The facts in the instant case

14

are very similar.

The court has held that an open ended balancing of the equities is not the correct analysis. The correct method is a straight forward binary inquiry. Was the person seized within the immediate vicinity to be searched?

## CONCULSION

The law enforcement agents performed an illegal and improper detention and seizure of the Defendant and the cell phone. That all evidence obtained from the law enforcement actions should be suppressed in this matter.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 26 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Office of the United States Attorney, further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following: none.

15

/s/ Michael W. Nielsen, Esquire
_____
MICHAEL W. NIELSEN, ESQUIRE
NIELSEN LAW FIRM.
720 West State Road 434
Winter Springs, Florida 32708
(407)327-5865 [FAX(407)327-0384]
Attorney for Defendant
Florida Bar No.: 0794392
nielsenlaw@cfr.rr.com

16

electrical service at his residence, and consequently he has to use his cellular phone for all of his communications.

30.    Based on my training and experience, I know that electronic devices (including cellular telephones such as the target cell phone) can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

## CONCLUSION

31.    Based on the foregoing, I have probable cause to believe that one or more individuals has used and is using one or more computers and/or internet-enabled electronic devices and/or storage media located in the residence at 9465 N. Argo Way, Citrus Springs, Florida 34434 more fully described in Attachment A1, to receive, distribute, and possess child pornography. I also have probable cause to believe that an individual has used or is using the cellular telephone more fully described in Attachment A2 to receive, distribute, and possess child pornography. Therefore, I have probable cause to believe the residence and item described above contain fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 2252A, and that the items more fully described in Attachment B to this affidavit (which are incorporated by reference), will be located in the residence.

32.    Accordingly, I respectfully request that search warrants be issued by this Court authorizing the search of the premises described in Attachment A1 and the

22

search and seizure of the items listed in Attachment B, and authorizing the search of

the target cell phone described in Attachment A2 and the subsequent search and

seizure of the items listed in Attachment B.

Steve Burros, Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this
_____ day of ~~November~~ December, 2020, at Ocala, Florida.

PHILIP R. LAMMENS
United States Magistrate Judge

23

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| *(Briefly describe the property to be searched* | ) | | |
| *or identify the person by name and address)* | ) | Case No. | 5:20-mj-1183-PRL |
| | ) | | |
| Cellular telephone assigned | ) | | |
| call number (352) 364-1308 | ) | | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Middle _____ District of _____ Florida _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A2

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before    12 | 15 | 20    *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Philip R. Lammens _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     12 | 1 | 20 @ 11:05am

_____
*Judge's signature*

City and state:     Ocala, FL

Hon. Philip R. Lammens, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>5:20-mj-1183-PRL | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A2**

**PROPERTY TO BE SEARCHED**

The property to be searched is a cellular telephone assigned the unique call number of (352) 364-1308, in the possession of Dustin Sandiford.  It is believed to be manufactured by LG and operate on the Android operating system, but its specific make, model, and serial number are currently unknown.

This warrant authorizes the forensic examination of this property for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.     Any and all computer(s), computer hardware, computer software, electronic storage media (including without limitation any and all disk drives, compact disks, flash drives, cellular telephones, personal digital assistants (PDA), digital cameras and/or memory cards, or any other device capable of electronic storage of data and/or images), computer-related documentation, computer passwords and data-security devices, videotapes, video-recording devices, video-recording players, and video display monitors that are or may be used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

2.     Any and all computer software, including programs to run operating systems, applications, such as word processing, graphics, and communications programs, including, but not limited to, P2P software, that may be or are used to: visually depict child pornography or child erotica, display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess or receive child pornography, child erotica, or information pertaining to an interest in child pornography or child erotica.

3.     Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, or distribution of child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.     In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica.

5.     Any and all diaries or address books containing names or lists of names and addresses of individuals who have been contacted by use of the computer(s) or by other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6.     Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means (including, but not limited to, the United States Mail or computer) any child

3

pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

8.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

9.    Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital-data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

4

10. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

11. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

12. Any and all cameras, film, videotapes or other photographic equipment capable of being used to produce, manufacture, store and/or conceal visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

13. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase,

5

sale, trade, or transmission, through interstate or foreign commerce by any means (including the United States Mail or computer) any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

14.     Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

15.     Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.     Any and all documents, records, or correspondence, in any format or medium (including envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to the identity of any and all owners and/or users of any computers, computer media and any electronic storage devices discovered in the premises and capable of being used to produce, manufacture, store and/or conceal visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

6

17.     All records on the device described in Attachment A2 that relate to violations of 18 U.S.C. § 2252A and involve Dustin Sandiford, including:

a.     All electronic evidence, including evidence that has been edited or deleted, included in the categories described in Paragraphs 2 through 16 above.

b.     Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

c.     Records evidencing the use of the Internet to communicate with data servers (including those operated by T-Mobile) including:

i.     records of Internet Protocol addresses used;

ii.     records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have

7

been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.